BROWN, Chief Judge.
| í Claimant, Preston Sims, appeals from the judgment of the Office of Workers’ Compensation in favor of Willis-Knighton Health System reducing his workers’ compensation benefits by 50% for his failure to cooperate with an order of rehabilitation. For the following reasons, we affirm.

Facts and Procedural Background

On October 17, 2006, Preston Sims sustained a back injury while in the course and scope of his employment with Willis-Knighton Health System (“WK”) in Shreveport, Louisiana. Sims suffered a herniated disk at L5-S1. His treating physician, Dr. Eubulus Kerr (dual certified in orthopedic surgery and spine surgery), recommended lumbar surgery. Although paying indemnity benefits, WK refused to approve the surgery. After a trial on the matter, the Workers’ Compensation Judge (“WCJ”), on September 8, 2011, ordered WK to approve and pay for the surgery, as well as continue to pay indemnity benefits. On March 7, 2012, Sims underwent L4-5 and L5-S1 360-degree lumbar fusion, with placement of pedicle screws, followed by a right L5-S1 micro lumbar decompression.
On July 7, 2011, the WCJ signed an order of rehabilitation wherein Lenora Maatouk was named Sims’ vocational rehabilitation specialist, Sims was ordered to “participate in an adult education program in order to obtain his GED as approved by Dr. Eubulus Kerr,” and, further, Sims was ordered to move forward with the entrance exam for the adult education program.
After the order of rehabilitation was entered, Sims took the adult education program placement test twice — October 10, 2011, and February 4, [¡,2013 — and the GED test twice — January 27, 2012, and November 8, 2013. Sims did not take any remedial classes prior to taking the GED exam and failed the exam on both occasions. Following the failure of his second GED exam, Ms. Maatouk informed Sims that in order for him to take the GED exam again (now named HiSET) he must take a new placement test, and she further directed that he enroll in remedial classes for approximately six to nine months prior to taking the exam again. Over several months, Ms. Maatouk tried to get Sims to enroll in the adult education classes to no avail.
On March 12, 2014, as a result of Sims’ refusal to enroll in adult education classes, WK filed a disputed claim for compensation with the Office of Workers’ Compensation seeking to reduce workers’ compensation benefits being paid to Preston Sims by 50% for his failure to cooperate with the order of rehabilitation signed by the WCJ on July 7, 2011.
A hearing on WK’s motion to reduce benefits was held on May 15, 2014. The WCJ deferred ruling on the motion at that time and instead ordered the appointment of an independent medical examiner, Dr. Carl Goodman. After receiving the medical report from Dr. Goodman, the WCJ ruled that WK was entitled to reduce Sims’ weekly indemnity benefits by 50% retroactive to March 12, 2014. Based on this adverse ruling, Sims has appealed.

Discussion

La. R.S. 23:1226(B)(3)(e) provides:
Upon refusal by the employee [to accept vocational rehabilitation], the employer or payor may reduce weekly compensation, including ^supplemental earnings benefits pursuant to R.S. 23:1221(3), by fifty percent for each week of the period of refusal.
We note from the outset that Sims does not dispute the fact that he was informed by Ms. Maatouk that he needed to attend *803 GED classes and that he failed to do so; nor did Sims make a request to modify the rehabilitation order. Nonetheless, Sims contends that the WCJ erred in reducing his indemnity benefits by fifty percent for refusal to cooperate with vocational rehabilitation, as attending the adult education classes is contrary to the recommendation of his treating physician, Dr. Kerr, whose approval of Sims participation in an adult education program is set forth in the order of rehabilitation. Specifically, Sims relies on a report dated April 1, 2014, from Dr. Kerr stating:
At this point in time, I do not think attending school is in [Sims’] best interest. The patient cannot sit or stand for any period of time let alone with chronic pain and taking medications, concentrating in anything that would be meaningful to him at this point in time.
Conversely, WK contends that it was only after they sought a reduction in indemnity benefits in March 2014, that Dr. Kerr changed his opinion and opined that it was not in Sims’ “best interest” to attend remedial classes.
The record shows that on at least two occasions in 2012, Dr. Kerr responded in the affirmative to letters from Ms. Maa-touk questioning whether Sims could participate in GED classes/adult education program. WK’s physician, Dr. Robert Holladay, concluded that Sims was capable of sedentary to light work and that he was able to attend GED classes.
|4As late as April 2013, Dr. Kerr agreed with Dr. Holladay’s findings that Sims is able to return to some type of work activities with restrictions; Sims functional ability is assigned at sedentary to light activity; and Sims is capable of attending GED classes and could alternate sitting and standing as needed.
Nonetheless, without any significant changes in Sims’ overall medical condition, Dr. Kerr abruptly changed his opinion, after WK sought a reduction in indemnity benefits, and opined that attending GED classes was not in Sims’ best interest. This opinion was contrary to his earlier findings, as well the assessment of Dr. Holladay.
Faced with Dr. Holladay’s assessment and Dr. Kerr’s conflicting opinions, the WCJ decided that it was best to get a third opinion from an independent medical examiner. The clinical assessment of Dr. Goodman was that Sims is capable of sedentary work as long as he is able to sit and stand as needed. Clearly, attending GED classes a few hours a week would qualify as sedentary work. Thus, taking Dr. Goodman’s report into consideration, the WCJ found that Sims’ refusal to attend GED classes constituted a failure to cooperate with vocational rehabilitation.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id.; Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993).
We recognize that the testimony of the treating physician should be given great weight. Hodge v. Manpower Temp. Serv., 45,648 (La.App. 2d Cir. 09/22/10), 47 So.3d 1148. However, the reversal of Dr. Kerr’s initial opinion is a factor as to what weight it is entitled.
Under the manifest error or clearly wrong standard of appellate review, we cannot conclude that the WCJ was clearly wrong.

*804
Conclusion

For the foregoing reasons, the judgment rendered by the Office of Workers’ Compensation reducing Preston Sims’ weekly workers’ compensation indemnity benefits by fifty percent for his failure to cooperate with vocational rehabilitation is hereby affirmed.